UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY SHEARER,                       Case No. 1:16-cv-824

           Plaintiff,                          Black, J.
                                                               Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Kimberly Shearer filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In March 2013, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning February 14, 2013, based on fibromyalgia, degenerative disc disease, high blood pressure, depression, anxiety, and back/sciatic nerve pain. (Tr. 180). After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before administrative law judge ("ALJ"). On April 24, 2015, she appeared with counsel[1] and gave testimony before ALJ Thomas Wang; a vocational expert also testified. (Tr. 45-

---

[1] Plaintiff was represented by Dustin Schock of Binder & Binder at her hearing, but is represented by Henry Acciani in this Court.

1

66). On May 22, 2013, ALJ Wang issued an adverse written decision, concluding that Plaintiff was not disabled.

Plaintiff was 53 years old at the time of the ALJ's decision. She has a high school education, and past relevant work at a semi-skilled level as both a receptionist and an officer manager, with both positions performed at the light exertional level. Plaintiff testified to additional past work as a food preparation worker at the medium exertional level, but testified that she quit that job in February 2013 due to her inability to perform its physical demands.

Considering all of Plaintiff's alleged impairments, the ALJ determined Plaintiff's high blood pressure, depression, and anxiety were not severe, but that Plaintiff continued to suffer from severe impairments that included "lumbar and cervical spine degenerative disc disease, obesity, failed back syndrome, plantar fasciitis, peripheral neuritis, and fibromyalgia." (Tr. 27). None of those impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (Tr. 28-29). Instead, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at a light level,

> with push and pulling limited as per the exertional weight limits of twenty pounds occasionally and ten pounds frequently; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally stoop, crouch, or crawl; frequently kneel; occasional exposure to extreme cold.

(Tr. 29). Although Plaintiff could not perform food service work, the ALJ found that she still could perform her prior work as a receptionist and office manager. In addition, the ALJ determined that she could perform a number of unskilled jobs that exist in significant numbers in the national economy, including the representative occupations of mail clerk, hand packager, housekeeper/cleaner. (Tr. 37-38). Therefore, the ALJ

2

concluded that Plaintiff is not under a disability. The Appeals Council denied review, leading Plaintiff to file this judicial appeal.

In her Statement of Errors, Plaintiff argues that the ALJ erred by: (1) giving insufficient weight to two treating sources, and instead relying on the opinions of agency consultants to determine her physical RFC;[2] and (2) improperly assessing Plaintiff's credibility. I find no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

---

[2]Plaintiff does not challenge the ALJ's determination that her mental impairments and high blood pressure were not severe, nor does she argue that the ALJ should have included any mental RFC limitations.

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

4

**B. Plaintiff's Claims of Error**

**1. Plaintiff's Physical RFC and Evaluation of Medical Opinions**

Plaintiff first argues that the ALJ erred by giving "great weight" to the assessments of state agency consultants, because they completed those assessments on July 3, 2013 and October 3, 2013, prior to the submission of most medical records. Plaintiff further complains that the consulting physicians based their review in part upon the findings and opinions of an examining consultant, Dr. Olayinka Aina, whose opinions the ALJ gave only "some" weight. Plaintiff suggests that the ALJ should have given greater weight to that examining consultant.

Aside from her criticism of the ALJ's evaluation of the consulting opinions, Plaintiff primarily asserts error in the ALJ's decision to assign "little" weight to an RFC questionnaire dated January 23, 2015 that was completed by Plaintiff's treating pain specialist, Dr. Michael Danko. Plaintiff argues that the ALJ unreasonably discounted that more recent treating source RFC opinion, in favor of outdated consulting opinions.

A disagreement with how the ALJ decided to weigh differing medical opinions "is clearly not a basis for …setting aside the ALJ's factual findings." *Mullins v. Sec'y of HHS*, 836 F.2d 980, 984 (6th Cir. 1987). The record reflects both that the physical RFC determined by the ALJ in this case is well supported by the record as a whole, and that the ALJ properly weighed the opinion evidence. The ALJ alone is responsible for determining a Plaintiff's RFC. *See* 20 C.F.R. § 404.1546(d).

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will

5

give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner is required to provide "good reasons" if the Commissioner does not give controlling weight to the opinion of a treating physician. *Id.*

The treating physician rule generally requires the ALJ to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). However, in *Blakley*, the Sixth Circuit reaffirmed that "[i]n appropriate circumstances," the opinions of non-examining consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Id.*, 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). While an ALJ may not reject a treating physician opinion solely based on the conflicting opinions of non-examining consultants, *see Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), no reversible error occurs when an ALJ determines that a treating physician opinion is not entitled to controlling weight because it is not well-supported, is internally inconsistent, and/or is inconsistent with the record as a whole.

Before turning to Plaintiff's criticisms of the ALJ's evaluation of the referenced opinions in the formulation of her physical RFC, it is worth noting that the ALJ provided extensive discussion of additional opinions and records that are not challenged by Plaintiff in this appeal. For example, based on other opinion evidence, the ALJ found no severe psychological impairments, in contrast to Plaintiff's claims that she was disabled due to depression and anxiety, and contrary to her assertion that she suffers from significant limitations in memory and concentration.

6

Of particular relevance to the physical RFC findings made in this case, the ALJ discussed the records and opinions of another treating physician, Dr. William Strauch. Dr. Strauch was Plaintiff's treating orthopedist, and first examined Plaintiff on August 14, 2013. On March 26, 2014, Dr. Strauch wrote a narrative letter that outlined his patient's treatment history and subjective reports of pain, but concluded that he did not think Plaintiff was totally disabled and that there "is probably a vocation out there for her." (Tr. 501). Dr. Strauch referenced Plaintiff's "fairly unremarkable [August 30, 2103] MRI," his examination findings, and other objective evidence that failed to support Plaintiff's subjective complaints and alleged limitations. (Tr. 500). Following up on his letter, he referred her for a functional capacity evaluation to provide objective evidence regarding her ability to work. (*Id.*; *see also* Tr. 30-31, citing Ex. 24F).

Plaintiff followed through with the recommended evaluation by a physical therapist on May 7, 2014, but did not to return for further treatment with Dr. Strauch after he notified her of the results. The ALJ accurately summarized those results:

> Results indicated that the claimant was at least capable of lifting 15 pounds floor to waist, 10 pounds waist to shoulder, 10 pounds overhead, 30 pounds push, and 30 pounds pull, with occasionally sitting, standing, walking, reaching, climbing, bending, squatting, kneeling, frequent grip, and fine motor. However, it was noted that a "preponderance of evidence indicates less than full participation" by the claimant in the evaluation. It was also noted that the demonstrated impairment is likely not the claimant's true status and that the indicated physical function data should not be used to project work capacity. The claimant was noted to fail 8/15 performance criteria, which identifies consistency of effort, quality of effort, and non-organic signs. Her profile was deemed consistent with over-guarding (Exhibit 25F). She was advised by Dr. Strauch on May 28, 2014 that the functional capacity evaluation indicated that she was employable in some type of position, but she said that she was still pursuing disability (Exhibits 22F, 25F). The subsequent record reveals that the claimant had not seen Dr. Strauch for over a year such that he was unable to complete the requested disability questionnaire (Exhibit 28F).

(Tr. 31).

7

The ALJ stated that he gave "some weight" to the referenced functional capacity evaluation, based upon the statements "suggesting that the claimant was not putting forth her best efforts and that the suggested limitations were likely not a true reflection of the claimant's abilities and limitations." (Tr. 35). The ALJ also appropriately gave only "some weight" to the opinion of Dr. Strauch that Plaintiff was *not* disabled, because the determination of disability "is reserved to the Commissioner," even though Dr. Strauch's statements supported the ALJ's decision. (Tr. 36).

Turning to Plaintiff's claim that the ALJ erred in evaluating other medical opinions, the undersigned finds no error. One of the challenged opinions is that of consulting examiner Dr. Olaynka Aina. At her June 13, 2013 exam, the only abnormality reported was limited range of motion in the lumbar sacral region and right shoulder. Otherwise, Plaintiff's muscle testing and range of motion were all normal, as was her gait, and neurological exam, with no tenderness on palpation of any joint. (Tr. 30, citing Exhibit 3E; *see also* Tr. 274-277). Dr. Aina opined that Plaintiff "should be able to lift, pull, and push 30 pounds occasionally, 15 pounds frequently," with no difficulty handling objects. (Ex. 5F at Tr. 279). The only statement relating to any type of limitation made by Dr. Aina was that prolonged sitting "for more than one hour or standing for more than thirty minutes would be affected." (Tr. 280). Given Plaintiff's unremarkable exam, the latter statement appears to be based upon Plaintiff's subjective complaints of low back pain, right shoulder pain, and bilateral hip pain, which Plaintiff reported to increase upon any activity, including standing and sitting. However, Plaintiff simultaneously reported to Dr. Aina that her pain "is usually relieved by taking pain medication." (Tr. 278).

As Plaintiff points out, the ALJ gave only "some" weight to Dr. Aina's findings and opinion. The ALJ did not find that Dr. Aina's assessment supported any greater physical RFC limitations due to her "fail[ure] to provide a complete function-by-function analysis of the claimant's ability to perform work related activities," and failure to "specify how long the claimant could sit and stand/walk, [stating] only that these abilities would be 'affected.'" (Tr. 34). In fact, Dr. Aina actually did reference some time frames by stating that Plaintiff's physical condition would impact or "affect[]" her ability to engage in "prolonged" sitting for more than one hour, or standing/walking for more than thirty minutes. However, the ALJ correctly observed that Dr. Aina never stated "how long the claimant could sit and stand/walk," nor did Dr. Aina opine that Plaintiff was in any way limited to sitting less than one hour or standing/walking less than thirty minutes. The mere existence of some degree of pain in different postural positions is not work-preclusive. Considering the record as a whole, including the detailed and substantial evidence cited by the ALJ in support of his RFC findings, and Dr. Aina's own benign findings on examination, the undersigned discerns no error in the ALJ's failure to further limit Plaintiff's physical RFC based upon Dr. Aina's vauge opinion that Plaintiff's ability to sit, stand, and/or walk would be "affected" by her impairment.

The undersigned also finds no error in the ALJ's decision to give "little" weight to the only opinion in the record that suggested a disabling level of symptoms, expressed by Plaintiff's treating pain physician, Dr. Michael Danko. The ALJ first accurately summarized Dr. Danko's clinical records:

> Dr. Danko apparently saw the claimant for pain management initially in August 2014, although his first record is dated December 18, 2014. The claimant had normal physical and mental exam findings with normal gait and was noted to be stable on her current opioid regiment with no changes necessary. She was 59 inches and 215 pounds and had a body mass index of 43.42 kg/m2. She reported exercising a few times a week

9

> at the YMCA and being more functional with the adjustment in her opioids. She was encouraged to eat better, increase activity, walking, yoga, water exercises and hand exercises… On January 14, 2015, the claimant complained of radiating pain down her arms and was given a prescription for a cervical spine [MRI]. She had right cervical facet tenderness, positive cervical facet loading bilaterally, and full but painful range of motion in her neck. She was noted to be morbidly obese and scheduling for bariatric surgery…. However, the claimant's February 17, 2015 cervical spine [MRI] revealed only chronic degenerative changes at several levels in the cervical spine with no acute abnormalities. (Exhibit 19F). The only other visit from Dr. Danko was an April 8, 2015 follow-up, with no physical or mental exam findings or any discussions of the mild findings on cervical spine magnetic resonance imaging.

(Tr. 32).

The ALJ went on to describe Dr. Danko's opinions, and basis for the "little" weight given to those opinions:

> Dr. Danko completed a spinal impairment questionnaire on January 23, 2015, indicating treatment for greater than one year. However, the first record indicates treatment commencing in August of 2014. The claimant was noted to have tenderness, limited range of motion in the cervical spine, and muscle spasms and trigger points in the trapezius muscles. The doctor indicated that the claimant could sit for two hours and stand/walk for one hour, presumably at one time. Notably, the doctor indicated on the next page that the claimant could sit for up to two hours at a time before needing a five to ten minute break prior to returning to a sitting position. The representative prepared questionnaire is somewhat unclear as to sitting/standing/walking limits at a time versus for the entire workday. Dr. Danko limited the claimant to ten pounds of lifting and carrying, but found her capable of walking a block, using standard transportation, shopping and banking, and climbing a few stairs. The doctor first indicated that the claimant had no significant limitations in reaching, handling, or fingering, but then inconsistently limited the claimant in these areas, with no ability to use her arms for any reaching. The claimant was noted to need extra unscheduled breaks during the workday every two to four hours and to be likely [to miss work more than three times a month (Exhibit 18F).
>
> Little weight is given to the Spinal Questionnaire completed by Dr. Danko, as said opinion is not fully supported by objective medical evidence and is highly dependent upon the claimant's reports of symptoms and limitations where the claimant is found to be not wholly reliable as a reporter of symptoms and limitations and is not consistent with the credible portion of activities of daily living evidence (Exhibits 18F, 20F). The limitations he suggested are internally inconsistent as discussed above. There are other

10

> problems with the questionnaire itself. For example, the questionnaire does not allow for the answer of no limitation in questions 14b, 15b, or 19. The doctor's reaching limitations (can never use arms for any reaching) are inconsistent with the claimant's admissions at the hearing that she can overhead reach and forward reach with some limitation in side reaching. Furthermore, these limitations are not supported by the doctor's own records. Just a month prior to this questionnaire, the claimant was noted to be stable with no changes necessary in her treatment. She reported exercising a few times a week at the YMCA and being more functional with the adjustment in her opioids. Dr. Danko encouraged her to eat better and to increase activity, walking, yoga, water exercises and hand exercises…. Although the claimant reported new radiating pain down her arms on January 14, 2015, the ordered magnetic resonance imaging did not support her complaints, and the sole follow-up from Dr. Danko does not discuss the results of this [MRI] or note any physical findings…. The claimant reported doing better with treatment, which is not reflected in this questionnaire. The suggested limitations are also inconsistent with the objective evidence of record and with other more credible opinions, such as the State agency medical consultants' assessments and the opinion of the consultative physical examiner.

(Tr. 35). As reflected by the ALJ's assessment, Dr. Danko's RFC opinions were not supported by his own clinical records, which failed to note motor loss, positive straight leg raise tests, abnormal gait, atrophy, or sensory loss. (Tr. 432). In February 2015, just a month after completing the questionnaire, Dr. Danko noted that Plaintiff was not in acute distress, and was alert and cooperative with a normal gait. No objective abnormalities were noted. (Tr. 454-457). At the April 2015 visit, though again failing to record any abnormalities or clinical findings, Dr. Danko discussed "alternative therapies and life style changes." (Tr. 585-586).

The ALJ's analysis is both thorough and well-reasoned, and the undersigned concludes that it easily satisfies the "good reasons" standard required to explain a decision not to give the opinions of a treating physician controlling weight. The regulations make clear that a treating physician's opinions are entitled to the presumption of controlling weight only if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and if "not inconsistent with the other substantial

11

evidence in your case record." 20 C.F.R. §404.1527(c)(2). Here, Dr. Danko's opinions were neither well-supported nor consistent with the overwhelming contrary evidence in the record that supported the ALJ's RFC findings, including Dr. Danko's own objective and clinical findings.

Plaintiff's statement of errors points out that although the ALJ referred to "treatment commencing in August 2014," the record includes a reference to Plaintiff's initial evaluation at the pain clinic on the date of July 11, 2014. (Tr. 445). The ALJ's reference to "August 2014" rather than "July 2014" admittedly reflects factual error. However, whatever the date of the initial visit, no records from that appointment were ever submitted to the agency by Plaintiff or by Dr. Danko. Thus, the undersigned finds the error to be both minor and harmless, with no impact on the validity of the ALJ's overall analysis of Dr. Danko's unsupported opinions. Pinning the date to mid-July 2014 does not detract from the fact that Dr. Danko erroneously stated that he had been treating Plaintiff for more than a year in January 2015, rather than for barely six months. More importantly, Plaintiff fails to point to any evidence in the record that would support Dr. Danko's extreme opinions, other than her own subjective reports.

Last, the undersigned also finds no error in the ALJ's analysis of the consulting opinions in this case. In July 2013, Dr. Steve McKee evaluated Plaintiff's medical records and opined that Plaintiff was capable of exertional activities that would have been consistent with medium level exertional work. (Tr. 94). Dr. McKee relied in part on a March 2013 office visit as well as the June 2013 consultative exam, both of which reflected largely normal findings.

A second consulting physician reviewed additional records on reconsideration, in October 2013. In contrast to Dr. McKee, Dr. Anahi Ortiz opined that Plaintiff would be

limited to light exertional work. (Tr. 107). Dr. Ortiz had access to Plaintiff's records from the Center for Rehabilitation and Sports Medicine, additional Hillsboro Health Center Records through October 2, 2013, and Plaintiff's own updated statements. In assessing Plaintiff's limitations, Dr. Ortiz specifically cited Plaintiff's June 2013 x-ray and an August 2013 office visit. (Tr. 104-105).

Under appropriate circumstances, an ALJ may give greater weight to even a non-examining consulting physician's opinions. *Blakley v. Com'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009). In *Blakley,* the appellate court reversed because the state non-examining sources did not have the opportunity to review a significant portion of the medical records and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007)). In other words, reversal was required based upon the ALJ's failure to articulate his reasons for crediting the consulting opinions, despite their lack of review of the full record. At the same time, *Blakley* held that even If an ALJ fails to articulate sufficient reasons for giving greater weight to a non-examining consultant, his decision still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

Here, the ALJ stated he was adopting a physical RFC that was consistent with the opinions of the two non-examining consultants, finding those assessments to be "consistent with the medical evidence overall," except that the ALJ added a limitation to extreme cold based upon the Plaintiff's testimony and additional evidence relating to her impairments. (Tr. 34; see also Tr. 32). As reflected above, while consistent with the RFC opinions of Dr. Ortiz, the ALJ's RFC findings were more restrictive than those of Dr. McKee.

13

Plaintiff fails to identify any evidence other than Dr. Danko's unsupported opinions or her own discredited subjective complaints that would be contrary to the RFC determined by the ALJ in this case. Even though Plaintiff correctly points out that Dr. Ortiz did not have access to many of Plaintiff's records, the ALJ himself thoroughly discussed those records, which (with the exception of Dr. Danko's questionnaire) did not support greater limitations. While it may have been preferable for the ALJ to more explicitly acknowledge the limited scope of records review by the non-examining consultants, any perceived articulation error is harmless in light of the ALJ's own thorough analysis of the evidence in this case.

### 2. The ALJ's Credibility Assessment

Plaintiff's second claim is that the ALJ erred in finding her statements "concerning the intensity, persistence and limiting effects" of her symptoms to be "not entirely credible." (Tr. 32). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387.

Most of Plaintiff's records reflect "mild to normal findings on physical and mental evaluations," with "mild or normal" objective findings, and only "mild" findings in imaging studies. The only abnormality found during a June 13, 2013 consultative physical

14

examination was limited range of motion in the lumbar sacral region and right shoulder. (Tr. 33). Since objective records did not fully support Plaintiff's reported level of symptoms, the assessment of her credibility played a significant role in this case. The ALJ found that "the description of symptoms and limitations that the claimant has provided throughout the record has generally been inconsistent, unpersuasive, and not supported with objective findings." (*Id.*).

Plaintiff acknowledges that SSR 96-7 lists seven factors to be considered in the assessment of credibility, in addition to a review of the medical evidence.[3] Although SSR 96-7p affirms that consideration of daily activities one of those factors, Plaintiff is critical of the ALJ's reliance on a function report completed by Plaintiff on April 24, 2013, in which Plaintiff admitted to a broad range of activities. Plaintiff complains that the ALJ gave too much credence to those activities, because her report contained qualifying statements indicating, for example, that her chores were performed slower than normal. (Tr. 212). Similarly, although she stated that she attends sports events for her grandkids (without qualifying statements), she now argues that "one can surmise that if she was having a particularly bad day, she would elect not [to] go to do minor housekeeping or other activities." (Doc. 14 at 11). Citing case law from the Seventh, Eighth, and Ninth Circuits, she maintains that the failure to recognize "critical differences between activities of daily living and activities in a full-time job…is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (*Id.*, citations omitted).

---

[3] On March 28, 2016, SSR 16-3p took effect, issuing new guidance regarding how a claimant's statements about the intensity, persistence and limiting effects of symptoms are to be evaluated. However, SSR 16-3p does not apply retroactively and SSR 96-7p governs the analysis in this case.

There is little doubt that cases exist in which ALJs inappropriately exaggerate a plaintiff's level of daily activities, or over-rely on such activities to sustain an otherwise unsupported disability determination.  This is not one of those cases.  The ALJ here did not rely solely on Plaintiff's reported daily activities as evidence that she could perform work on a sustained basis, but instead provided numerous examples of inconsistencies among and between her statements and other evidence of record.  Those examples easily satisfy the "substantial evidence" standard required to uphold his negative credibility assessment in this case.

First, the ALJ pointed out that although Plaintiff claimed significant pain and limitation since a 2006 failed back surgery, the record reflected that she had returned to work after that surgery, performing several jobs full-time without benefit of her current medications and more recent therapies.  (Tr. 33).   In addition, Plaintiff

> admitted that she could perform most daily household activities with minor pain.  She reported caring for animals, performing personal care, preparing meals, and doing laundry.  She also reported walking, driving, shopping (in stores, by phone, by computer), paying bills, and handling a savings/checking account.  Activities included television, reading, board games, playing cards, and playing computer games, which she wrote that she can do daily and well.  She reported spending time with others on the phone or in person and playing word games daily.  She reported attending her grandkids' sports events on the weekends…. On December 18, 2014, the claimant reported exercising a few times a week at the YMCA....
>
> These daily activities also reveal inconsistencies in the claimant's reports that are relevant to the issues of disability.  The claimant testified she has a moderate attention span and cannot focus or pay attention long and has trouble remembering due to her fibromyalgia.  She said she has difficulty manipulating objects due to numb fingertips, which she attributed to her fibromyalgia.  She said she cannot open jars or doors due to recently diagnosed arthritis in her hands.

(Tr. 33).  The referenced alleged limitations were inconsistent with her reported activities, many of which "involve the ability to pay attention and remember things and/or to finely and grossly manipulate things."  (*Id.*).  Additionally, although Plaintiff alleged

16

frequent forgetfulness and difficulties with focus at her psychological evaluation, she was noted to have "no problems in these areas during the evaluation." (*Id.*). The ALJ pointed out that "given the claimant's extensive activities of daily living, her allegations of lying down for a good part of the day appear inconsistent." "Her report of being able to sit for only twenty minutes at a time is also contradicted by her ability to sit without apparent difficulty for over thirty five minutes during the hearing." (*Id.*). Further, the June 2013 functional capacity evaluation suggested less than full effort. (*Id.*).

In addition, the ALJ noted evidence that Plaintiff had not been entirely compliant in following her doctor's advice, including Dr. Danko's advice that she eat better and increase her activity, walk more, and engage in yoga, water exercises and hand exercises. At the hearing, Plaintiff stated that she participates in water therapy but does not otherwise exercise, despite her providers' recommendations to lose weight and exercise thirty minutes per day five days per week. (Tr. 34). Moreover, despite her testimony that she obtained no relief from treatment, clinical records reflect Plaintiff's reported benefit from her aqua therapy and injections. (Tr. 34, citing Exhibit 15F at 13). On November 27, 2013, she reported no pain from sciatica since her injection, and in February 2014, her orthopedist stated she was doing much better with respect to her low back following injections. (Tr. 34). Similarly, during aqua therapy from June through September 2014, treatment notes reflected consistent progress, with a greater range of motion and decreased reported pain at discharge (which she requested). (Tr. 34). On December 18, 2014, Plaintiff also had normal physical and mental status findings. At that time, she reported exercising a few times a week at the YMCA, and that she was more functional with adjustment to her opioids, with no further changes to her medications required. (*Id*).

17

In short, the ALJ's consideration of Plaintiff's daily activity level, as one of myriad factors impacting the assessment of her credibility, reflects no error. An ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. *See* 20 C.F.R. §415.929(c).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY SHEARER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:16-cv-824

Black, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).